## SUPREME COURT.

### EDMUND J. POWERS agt. JOHN SHEPARD.

The first seven sections of the act of 1865, chapter 29, providing for state bounties to volunteers in the army and navy, &c., the 3d and 4th sections of which provide for and prohibit a sum not exceeding $600 to be paid for each three years volunteer, became a law and *took effect immediately on its passage,* Feb. 10th, 1865, as declared in the act, and continued in force, notwithstanding the provisions of chapter 41 (*Laws of* 1865), passed on the 24th February, 1865, which re-enacted the same seven sections contained in chapter 29, and declared, "*this act* is hereby declared to be a law from the time of its passage ; *but it shall not take effect until after the canvass of the votes by the board of state canvassers next after the general (next November) election.*" (INGRAHAM, *J., dissenting.*)

Consequently, an agreement made on the 21st of March, 1865, to pay $830 for each of such volunteers for three years, is void, as being in violation of chapter 29.

The *fourth section* of said chapter 29, prohibiting a larger sum than $600 to be paid for the three years volunteers, is *not unconstitutional.* (*Overruling the decision S. C. at special term,* 30 *How.* 8.)

*New York General Term, May,* 1867.

*Present, Hon.* W. H. LEONARD, *P. J.;* D. P. INGRAHAM *and* JAMES C. SMITH, *Justices.*

MOTION by plaintiff for judgment on a verdict rendered in his favor, subject to the opinion of the court at general term.

The case proved is briefly this:

In March, 1865, the defendant was the supervisor of the town of Sparta, in the county of Livingston, and, as such, was engaged in raising recruits to fill the quota of that town, under the call for men for the army and navy of the United States, issued by the president on the 19th of December, 1864, or the next call thereafter. For that purpose, he entered into an agreement, in writing, with the plaintiff, dated at Jersey City, the 9th of March, 1865, by which he, as such supervisor, authorized the plaintiff to recruit and fur-

nish for the defendant, and for his said town, seventeen three years naval recruits, or the credit of the same duly made, for each of which he agreed to pay the sum of eight hundred dollars.

On the 21st of March, 1865, he made a second agreement, indorsed upon the first, by which he undertook to pay the plaintiff, for furnishing the recruits provided for in the first agreement, the additional sum of eight hundred and fifty dollars, besides the amount mentioned in said first agreement.

The plaintiff furnished the number of men provided for between the 21st and 25th of March, and the defendant paid the sum stipulated in the first agreement.

This suit is brought to recover the additional sum of eight hundred and fifty dollars, under the second agreement.

On the trial, the defendant moved to dismiss the complaint, on the ground that the contract sued on is void, and is in violation of the laws of this state, and particularly of chapter 29 of the laws of 1865, and of the fourth section of that act.

The motion was denied, and the defendant's counsel excepted.

IRA D. WARREN, *for plaintiff.*
S. T. FREEMAN, *for defendant.*

JAMES C. SMITH, J.  It is insisted upon, by the defendant's counsel, that the agreement sued on is in violation of the fourth section of chapter 29 of the laws of 1865.  The first three sections of the statute referred to provide for the payment of a state bounty to volunteers furnished from this state, as in said act provided, in order to fill the quota of the state, under the call of 19th December, 1864, and also under any subsequent call during the war then existing, such bounty not to exceed the sum of six hundred dollars to a volunteer for three years, four hundred dollars to one for two years, and two hundred dollars to a volunteer for one year.

Powers agt. Shepard.

The fourth section provides that no city, county or town shall thereafter borrow or raise money for paying bounties to volunteers under said call or any subsequent call, otherwise than as is provided in the seventh section of said act, and not to exceed one hundred dollars for hand money and incidental expenses for procuring such volunteer; nor shall any city, county or town, or any individual, or any individuals, pay any money for such purpose or purposes, otherwise than as is in said act provided (except that an individual may in any way hire a substitute, to exempt himself from draft).

The seventh section amends section 22 of chapter 8 of the laws of 1864, which in its original form authorized the raising of money upon the credit of towns and counties, for the purpose of paying local bounties to volunteers. By the amendment, a proviso was added, to the effect that the bounties raised, paid or offered, under the provisions of that section, shall not exceed in amount the state bounties provided for by said act of 1865. One of the objects specified in the time of the last mentioned act is "to prohibit any local bounties to volunteers," drafted men or substitutes.

The intent of the prohibitions and restrictions contained in section four seems clear. They were designed to prevent the serious mischiefs resulting from an unrestricted competition between different localities in respect to bounties, which we may know judicially, as matter of public history, were widely and severely felt by the people of the state, before the passage of the act referred to. Under the stimulus of such competition, extravagant local bounties were offered and paid on every hand, and an enormous load of debt and taxation was about to be rolled up, to be borne by the people of the towns and counties upon whose credit it was incurred; and this very extravagance of expenditure tended to defeat the object of offering bounties, and to impede the recruiting of the army, by appealing without stint to the cupidity of men, and inducing them to delay volunteering, in the hope of getting a still larger bounty at a later day.

The act in question intended directly to repress these mis-chiefs.

The plaintiff's counsel argues, in view of the peculiar language of the restriction, that it was not intended to limit the *amount* to be paid for bounties. The language is, "Not "* * * * pay any money * * * *otherwise* than is herein provided;" and this, it is urged, does not restrict the amount. The idea is naturally suggested by the form of expression used, which is not apt, but obviously such is not the meaning. If the restriction does not relate to the amount, it can only refer to the *mode* of raising money for bounties; and it applies in terms to individuals, as well as to towns and counties. But under section 22 of the act of 1864, individuals could not raise money in the mode prescribed by that section, and towns and counties could not raise it to pay bounties in any other mode. So that, upon the plaintiff's construction, the restriction would be inapplicable to individuals, and nugatory as to towns and counties. Besides, it would not meet any of the mischiefs already adverted to. The construction contended for by the plaintiff's counsel is not aided by the circumstance that the last clause of the section four expressly declares void all acts of counties, towns and cities, in contravention of the provisions of that section, and does not declare void the acts of individuals violating those provisions. That clause is declaratory merely. As the officers referred to had power, under section 22 of the act of 1864, to raise money, in the mode thereby provided, to pay bounties to an unlimited amount, and would continue to have the same power within the limits fixed by section four, it was expedient, if not necessary, to declare expressly that the exercise of such power in excess of the prescribed limits would be void; but such declaration was not needed, in respect to the acts of individuals, as they derived no power from the former statute, and their acts in violation of the latter statute would be void without an enactment to that effect, by force of the common law. (1 *Kent,* 518.)

Powers agt. Shepard.

The plaintiff's counsel also claims that the agreement in suit is not within the prohibition of the act, as it does not provide for the payment of any sum whatever to a volunteer. But it requires the payment of a stipulated sum to the plaintiff, in consideration of his procuring a certain number of volunteers to the credit of the plaintiff's town, and the sum stipulated by the contract exceeds the rate of six hundred dollars for each man. By the contract, the plaintiff becomes a middleman, or recruit broker. It enables him to go into the market and pay sums exceeding the amount fixed by the law as bounties for volunteers, and retain a liberal profit to himself. That was the actual result in the present case. According to the testimony of the plaintiff himself, he paid eight hundred and thirty dollars for the men; not to the men themselves, but to the men who shipped them. If the transaction is valid, the statute is a dead letter. The agreement is just as obnoxious to the policy of the act as if it had stipulated that the sum expressed should be paid directly to the volunteers. It has the same tendency to create and foster the unhealthy competition which the statute has intended to suppress. It is an attempt to evade the statute, and consequently it is void, if the statute is valid.

This brings us to the consideration of the other positions taken by the plaintiff's counsel. First, that the restriction in section four is unconstitutional; and secondly, that it did not take effect until after the agreement sued on was made.

Respecting the constitutionality of the act, no question could have been entertained, but for the opinion delivered by the learned judge who decided this case at special term, on a demurrer to the complaint. (1 *Abb. R. N. S.* 129.)

He held the act unconstitutional, and placed his decision upon the ground that the legislature have no power to prescribe to the citizen what price he shall pay to the substitute in the army. It will be observed, however, that the act expressly permits an individual to hire a substitute in any way, to exempt himself from draft. It restricts individuals

only so far as is necessary to prevent the mischief at which the act was aimed. With all due respect, I conceive that the power of the legislature to adopt such restriction cannot be successfully questioned. The measure is clearly within the exercise of their undoubted power to provide for raising men to fill the quota of the state.

The remaining question is, whether section four of the act took effect before the agreement in the case was made.

The agreement is dated the 9th of March, 1865. The act (chapter 29) was passed the 10th of February preceding, and it expressly provided that each of its sections should take effect immediately, except the eighth, ninth and tenth. Those sections authorized the creating of a state debt not exceeding thirty millions of dollars, for the purpose of raising means for the paying of bounties provided for by the act, the bonds of the state to be issued to obtain the money, and the debt to be paid by tax, the interest annually, and the principal in eighteen yearly instalments. The eleventh, twelfth and thirteenth sections provided for submitting the question of the debt to the people at the next general election.

On the 24th of February, 1865, the legislature passed another act, entitled "An act to provide for filling the quota of men required from this state for the army and navy of the United States," and to amend section 22 of chapter 8 of the laws of 1864, and to regulate local bounties to volunteers, drafted men or substitutes (chapter 41). The act consisted of eleven sections. The first seven were a transcript of the first seven sections of the act of February 10. The eighth appropriated not exceeding thirty millions of dollars, for the purpose of paying the bounties provided for in said act. The ninth provided that a state tax be levied, not exceeding two per cent per annum, to be devoted to restoring to the treasury the money so appropriated; and the tenth section authorized the comptroller to anticipate such tax by borrowing from any fund in the treasury, upon the credit of the general fund, the necessary sums to carry out the provisions

of the act. The eleventh section furnishes the key to the construction of the two acts, and in these words: "This act is hereby declared to be a law from the time of its passage; but it shall not take effect until after the canvass of votes by the state canvassers next after the next general election; and if it should then appear at such canvass that a majority of the votes cast at such election, upon the question of creating a state debt for the purpose of raising money to pay boun-ties, for the purpose of filling the quota of men called for from this state, under the said call of December 19th, 1864, passed February 10th, 1865, has been against creating such a debt, then the said board of state canvassers shall at once, upon completing such canvass, certify that fact in writing to the governor, and the governor shall at once, upon being so certified, issue his proclamation declaratory thereof, and from the day of issuing such proclamation this act shall take effect. But if, on making such canvass, it shall appear that a majority of the votes cast upon the said question have been for cre-ating the said debt, then the said board of state canvassers shall at once, in writing, certify that fact to the governor, and the governor shall at once, by proclamation, make pub-lic such result; and this act shall not then take effect until after the adjournment of the next legislature."

The first seven sections of the two acts being in precisely the same language, the plaintiff's counsel argues that the provisions of the latter act that those sections shall not take effect until after the canvass, or till after the next session of the legislature, as the case might be, was an implied repeal of the provision of the first act that they should take effect immediately. The construction is ingenious, but I think it is not sound. The two acts had a common object, to wit, to raise moneys to pay bounties for the purpose of filling the quotas of the state, but their modes of accomplishing the object were entirely different. The plan of the first was to provide for raising the money by creating a state debt under the 12th section of the 7th article of the constitution, which

requires a submission to the people. The scheme of the second act was to provide for the contingency of a failure to obtain the requisite vote to ratify the plan of the first act, by appropriating from the state treasury the sum needed for bounties and levying a tax of two per cent, to be applied to restoring in part the sums so appropriated. The latter act did not contemplate or require the repeal, suspension, or abandonment of the former; on the contrary the former was to be tried, and if ratified by the people, it was to be carried out. Here, then, were the two distinct plans, of each of which the first seven sections referred to were a part. As a part of the plan created by the first act, they were to take effect immediately after its passage, but as a part of the plan of the latter act, they were not to take effect till after the canvass. As a part of chapter 29, they had at once, and continued to have, the same effect, in all respects, as if chapter 41 had not been enacted. This is made more apparent by chapter 56 of the laws of 1865, passed February 27th, which provides among other things, that a state tax of two per cent be levied for the next fiscal year, to raise means to pay the bounties directed to be paid by chapter 29, and authorizes the comptroller to issue bonds of the state in anticipation of the said tax, for the purpose of raising the money required for such bounties without delay, and also directs that if chapter 29 be approved by the people at the next election, said tax shall not be collected, and said bonds shall be paid from the proceeds of the stocks authorized by chapter 29.

The plaintiff's counsel claims further, that the effect of chapter 29 is postponed by the operation of its own section 11, which provides *"that this act* shall be submitted to the people on the next general election." The argument is that the entire act is submitted, and therefore the effect of the whole is postponed till the result of the election is declared. The true construction of these words is that only so much of the act is submitted as provided for the debt proposed to be created. That is all that it was necessary to submit to ac-

complish the object of the act, and it is all that the legislature could properly submit to the people. (*Barto* agt. *Himrod*, 8 *N. Y. R.* 483). This construction makes sections 11 and 14 of chapter 29 consistent with each other, as to the time when the different provisions of the act shall take effect.

It may also be remarked that the provisions of section 4 of chapter 29 may stand alone even if all the other parts of that act fail. The limitations which it imposes upon local bounties have no necessary connection with the plan to create a fund for a state bounty.

For these reasons, I am of the opinion the defendant is entitled to judgment on the verdict.

LEONARD, P. J. If it be held that section 11, chapter 41, of the laws of 1865, suspends the operation of chapter 29 or the same session, then the latter chapter will become nugatory; as it will be seen, that in case the people voted against the loan, chapter 41 then came into operation; and should not the vote be for the loan, the same chapter was also to take effect at a future period; the governor, in either case, having first issued his proclamation declaratory of the result Whichever way the vote resulted, chapter 41 would eventually become operative; and if chapter 29 be suspended in the meantime, the seven sections which were identical in the two chapters would never necessarily have any operation under the suspended act. This construction is equivalent to holding chapter 29 to have been repealed.

The existence of chapter 29 could not have been overlooked by the legislature, when the latter act followed the former by the lapse of two weeks only. Nor is it probable that the repeal would have been left as the result of a legal implication, had such been the intention of the legislature.

It is argued by my brother judges in this case, and I concur, that the identity of the first seven sections of the two chapters does not affect a repeal of those sections in the first act.

That the first act was not to become inoperative according to the legislative intention, is further confirmed by the enactment of chapter 56 by the same legislature on the 27th of February, a few days later only than the date of chapter 41, which was declared to be a law from the time of its passage, although the period when it was to go into effect was postponed.

Chapter 56 contemplates the payment of bounties directed by chapter 29, and provides for raising the money temporarily for that purpose by the comptroller, to be redeemed from the proceeds of a direct tax of two per cent, or from the the proceeds of the loan, in case the people accepted that plan as proposed by chapter 29.

The construction that holds chapter 29 to be suspended leaves no authority in force until several months have elapsed (the election of the following November) for the payment of bounties by the state; and thus the operation of a subsequent enactment (chap. 56) is also suspended, so far as it contemplates an immediate expenditure of money from the treasury for that purpose.

These views make it entirely clear to my own mind, that it was the intention of the legislature that chapter 29 should be considered in full force, notwithstanding the enactment of chapter 41.

The declaration that chapter 41 is a law from the time of its enactment, also favors, in some degree, this construction, inasmuch as it would otherwise be inconsistent that similar provisions, contained in a former chapter, should be in operation as a law during the period when, by chapter 41, they were not to take effect.

The conclusion is thence derived that the contract sought to be enforced by this action, contravened the provisions of chapter 29 forbidding the payment of bounties above the prescribed amount, and is therefore void.

The point that the contract is not with a volunteer nor for the payment of bounties, is not available.   The policy of

the law is destroyed by permitting contracts for procuring volunteers by the payment to any one of an amount beyond the sums prescribed by the act for bounty and hand money.

The defendant is therefore entitled to judgment upon the exceptions.

INGRAHAM, J. *dissenting.* In 1865, the defendant being supervisor of Sparta, in Livingston county, New York, made an agreement with the plaintiff to pay the plaintiff for each of seventeen three years naval recruits, which he should recruit and furnish for defendant and his town, the sum of eight hundred dollars. This agreement was signed by the defendant and dated 9th of March, 1865.

The plaintiff furnished the recruits between the 21st and 25th of March, 1865.

On the 21st of March, 1865, the defendant made another agreement to pay the plaintiff the additional sum of eight hundred and fifty dollars, in consideration of the rise in the price of three years volunteers.

The plaintiff paid for each recruit eight hundred and thirty dollars to those who shipped them, not to the recruit.

This action is brought to recover eight hundred and fifty dollars under the last contract.

Upon the trial the defendant moved to dismiss the complaint, upon the ground that the contract was void and in violation of the provisions of an act of the legislature. The motion was denied and the defendant excepted.

The court directed a verdict for the plaintiff, subject to the opinion of the court at general term.

There is nothing in the contract itself to impair its validity, and the only ground upon which it is claimed that the contract is void, is that it is in violation of the provisions of the law of 1865, chapter 29.

The act of the legislature referred to provided for a payment by the state of the sum necessary to procure volunteers, and authorized the issue of stock for that purpose.

It also provided, in the 3d section, for the payment to each volunteer of six hundred dollars if he enlisted for three years, and a less sum for a shorter term of service.

In the 4th section, any city, county, or town, or any individual was prohibited from paying any money for such purposes, otherwise than as therein provided, and no city, county, or town could borrow or raise by tax any money for the purpose of paying bounties, &c., except as provided in section 7 of the act, and not to exceed one hundred dollars for hand money and incidental expenses for procuring each volunteer.

The 7th section authorized the board of supervisors to raise money for the purpose of paying bounties and paying the incidental expenses, and limited the amount to be raised to six hundred dollars for three years men, and lesser sums for shorter terms.

It was also provided for submitting to the people this act for their approval, and the last section directed that the 3d, 4th, 5th, 6th and 7th sections should take effect immediately, but the 8th, 9th and 10th sections (providing for a loan) should not become a law until ratified by the people.

On the 24th of February of the same year (chap. 41) the legislature passed another act containing these sections in the same words as in chapter 29 with other provisions, and providing for the submission to the people of the last act, and containing in the 11th section the following provisions, viz, that the act should be a law from the time of its passage, but should not take effect until after the canvass of the votes after the next general election ; that if it should appear at such canvass that a majority of the votes cast were against creating the debt, the state canvassers should so certify to the governor, who was to issue his proclamation, and the act should take effect from the day of issuing the proclamation. If a majority of the votes were for creating the debt, the same was to be certified as before, but the act should not take effect until after the adjournment of the next legis-

lature. Or in other words, if the people did not approve of creating the debt the act should take effect at once; and if they did approve of such a debt, then the act should not take effect until after the session of the next legislature.

Under either provision, however, this act was not in force at the time of the making this contract, and its provisions have no effect thereon. There is nothing in the act directly repealing the former act (chap. 29), and the mere re-enactment of the provisions of that act cannot be construed as a repeal thereof.

We are therefore left to decide this case upon the provisions of chapter 29, so far as they were in force at the time the contract was made, unless the 11th section of the act chapter 41 is to be construed as suspending the operation of the sections of chapter 29 incorporated in them.

That section provided that none of the previous sections should in any event take effect until after the November elections; that is, that the provision therein limiting the amount to be paid to a volunteer and for hand money, and which was in fact the same provision as was contained in section 4 of chapter 29, should not take effect until after the November election. I think the fair construction of this section is that the legislature intended that this section, and the enactments contemplated therein, should be suspended until after the people voted thereon. The object of submitting it to the people was to obtain their assent to a loan, and unless such loan was obtained it was not deemed advisable in that act to restrain the payment of any sum to obtain volunteers until after the vote of the people. If, notwithstanding, it should be held that the act chapter 29 was in force, it would be in conflict with the provisions of the 11th section of the 41st chapter, and would render nugatory the provisions suspending the operation of the same section as contained in the latter act.

The two acts must be read together, and effect given to the provisions of both as if they were incorporated in one

act, and in such a manner as not to render either a nullity. Such a result can be obtained by holding that these sections in the act, chapter 29, which were incorporated in the act chapter 41, and then re-enacted, are controlled in their operation by the provisions of the last act; and if so, then they were not in operation when the contract was made.

I do not concur in the opinion that the legislature could not limit the amount to be paid for volunteers. They had the power of prohibiting any but drafted men from being received in the army, and having that power, they might also say that a limit should be placed on the sums to be paid for substitutes.

For the reasons, however, first stated, I think, at the time of making this contract there was no limitation in force, and that judgment should be rendered in favor of the plaintiff upon the verdict.

Judgment ordered for defendant.